## In re FEDERAL FACILITIES REALTY TRUST.

## In re NATIONAL REALTY TRUST.

### Nos. 58334, 58335.

United States District Court
N. D. Illinois, E. D.
April 12, 1949.

The United States Court of Appeals, 184 F.2d 1, subsequently rendered a judgment reversing this order in part, and the United States Supreme Court, 71 S.Ct. 680, reversed the judgment of the Court of Appeals and remanded the cause to the District Court.

No. 58334.

Deming, Jarrett & Mulfinger, Chicago, Ill., for Stacy C. Mosser (resigned) and Joseph Schwartz, cotrustees.

Goldman, Allshouse & Healy, Clausen, Hirsh & Miller, Chicago, Ill., for petitioning creditors.

Jacob B. Courshon, Chicago, Ill., for John W. Guild, indenture trustee.

Murphy, Pearson & O'Connor, Chicago, Ill., for Jacob Kulp, Myrtle Johnson and Joseph Baumann, bondholders.

Harry Biossat, Chicago, Ill., for debtor.

Friedlund, Levin & Friedlund, Chicago, Ill., for C. Almeroth, bondholder.

Irving B. Campbell, Chicago, Ill., for bondholders.

Irving Herriott, Chicago, Ill., for Paul E. Darrow.

Alster, Berger & Wald, Chicago, Ill., for Helen Valiquet, certificate holder.

Stanley Kaplan, Chicago, Ill., for Joseph Schwartz, cotrustee.

No. 58335.

Deming, Jarrett & Mulfinger, Chicago, Ill., for Stacy C. Mosser (resigned) and Frank Whiston, cotrustees.

Goldman, Allshouse & Healy, Clausen, Hirsh & Miller, Chicago, Ill., for petitioning creditors.

Murphy, Pearson & O'Connor, Chicago, Ill., for Jacob Kulp, Myrtle Johnson, Joseph Baumann, shareholders.

Wm. J. McCormack, Chicago, Ill., for debtor.

Alster, Berger & Wald, Chicago, Ill., for Wm. M. Wallace and others, shareholders.

Jacob B. Courshon, Chicago, Ill., for M. R. DeWoskin, shareholder.

Irving Herriott, Chicago, Ill., for Paul E. Darrow.

Irving B. Campbell, Chicago, Ill., for shareholders.

Julius Polikoff, Chicago, Ill., for Mrs. J. Polikoff, shareholder.

CAMPBELL, District Judge.

This matter comes before the Court upon a Report of Special Master Archie H. Cohen in the final reports and accounts and supplements thereto of Paul E. Darrow, former trustee herein, to which objections were filed by the Securities and Exchange Commission, Stacy C. Mosser, successor trustee, and John W. Guild, successor trustee under a certain trust indenture.

On May 24, 1948, by order of the executive committee, the matters of Federal Facilities Trust, debtor, a common law trust, and National Realty Trust, debtor, a common law trust, were reassigned from Judge Holly's calendar, where they were previously pending, to my calendar. On this date, among matters pending for action, was the aforementioned Special Master's report, together with objections filed thereto.

Paul E. Darrow was appointed trustee of Federal Facilities Trust on April 25, 1935 and of National Realty Trust on May 24, 1935. From these dates until his resignation on August 10, 1943, he served as trustee of both debtors, conducting their business and managing and operating their 27 subsidiaries. The final reports and accounts and supplements thereto here involved cover the entire periods of time Darrow served as trustee and were intended to fully account for his administration of these trusts.

The early history of both common law trusts is set forth in documents filed in these proceedings. It appears that in 1920 Jacob Kulp & Company became a corporation engaged in the mortgage business. After such incorporation, it organized and promoted 27 building corporations which were financed through the sale of first and second mortgage bonds to the public. Each building was owned by a separate corporation and all, with a few exceptions, were constructed to be leased to the government for use as post offices or post offices combined with stores or apartments. The stock of each of these corporations was either issued to Jacob Kulp or to Jacob Kulp & Company. The principal income derived by Jacob Kulp & Company or Jacob Kulp was from the control and management of these properties.

On September 10, 1929, Federal Facilities Realty was created by a declaration of trust naming Jacob Kulp, Lee Kulp and Myrtle Johnson as trustees. The Federal Trust authorized its trustees to issue 500,000 shares of beneficial interest and 10 year collateral trust 6½% bonds in the sum of $1,000,000, maturing October 1, 1939. 250,000 of these shares of beneficial interest and $558,300 in bonds were issued and remain outstanding. Jacob Kulp and Jacob Kulp & Company transferred to Federal's trustees all of the capital stock of 14 of these building corporations for which he received 100,000 shares of beneficial interest and $300,000 of collateral trust bonds.

On July 2, 1930, National Realty Trust was created and Jacob Kulp, Lee Kulp and Myrtle Johnson were named as trustees. The National declaration of trust authorized the issuance of 180,000 shares of the par value of $25 per share, of which 46,636.5 shares were issued and remain outstanding. Jacob Kulp and Jacob Kulp & Company transferred to National's trustees all of the capital stock of 13 of the building corporations for which he received 20,000 shares of beneficial interest in the debtor.

All of these building corporations, with a few exceptions, have been reorganized since the filing of these proceedings and during the time Darrow acted as trustee.

In December, 1934, involuntary 77–B petitions were filed in this Court by creditors of Federal Facilities Realty Trust and National Realty Trust, hereinafter called "Federal" and "National", and shortly thereafter Paul E. Darrow was appointed trustee for both trusts. By order of this Court, Paul E. Darrow was authorized to contract with the subsidiaries to manage

the properties, collect the rents, select the employees, and place the insurance, at a compensation of 5% of the gross income. Pursuant to this order, the said Darrow employed Jacob Kulp and Myrtle Johnson, two of the founders of the trusts, to be associated with him in the performance of his duties as trustee. By further order of this Court, the salaries of Darrow, Kulp and Johnson were fixed as follows: Darrow $500 per month, Kulp $300 per month and Johnson $250 per month. It appears not to be disputed that while employed by the trustee, Miss Johnson supervised the trustee's office, advised him concerning management questions and personally took care of many details concerning the reorganization of the subsidiaries. Both Jacob Kulp and Miss Johnson had access to all the trustee's records and information and dealt directly with outstanding bondholders, both in an individual capacity and as employees of the trustee and were persons fully informed in all matters pertaining to the business of the trusts.

While employed by the trustee, Jacob Kulp and Miss Johnson organized the Colonial Securities Company, a corporation. The stock of this company was owned by the Kulps and Miss Johnson, and through this company they engaged in the business of purchasing and selling securities of the trusts' subsidiaries with trustee Darrow's knowledge and approval.

The Court, on June 19, 1942, appointed one Frederick B. Andrews, a certified public accountant, to make an investigation of trading transactions of Federal and National and the 27 subsidiaries, and upon the completion of his investigation he filed a report which became known as "the Andrews' Report". .

Following the Andrews' investigation, on August 13, 1943, Paul E. Darrow resigned as trustee of Federal and National and on October 15, 1943 filed his final accounts. The report in Federal covers the entire time of Darrow's trusteeship service, namely, from April 25, 1935 to August 13, 1943. In National, the period covered is from December 1, 1940 to August 13, 1943. By order of Court entered January 31, 1941 in National, the trustee's acts and doings from May 24, 1935 to November 30, 1940 were approved.

The Federal final report here involved filed October 15, 1943, among other things, states that Darrow, as temporary trustee, was given full authority to direct, maintain and continue the business of Federal and to manage its properties, and when made permanent trustee the additional rights, powers and authority of a trustee in bankruptcy and a receiver in equity. In accordance with such power, Mr. Darrow states in such account that he conducted the business of the debtor; that he discovered the necessity of reorganizing many of the subsidiary corporations, and he caused the reorganization of all of Federal's subsidiaries, with the exception of the Roseland Building Corporation; that in conducting the business of the debtor he received interest payments on bonds, management fees from the operation of the properties, and with the surplus funds from time to time purchased bonds of the subsidiary corporations. Attached to his account is a summary of the status of the underlying companies of Federal as of August 13, 1943, and reference is made to the subsidiary corporations of Federal and a statement concerning how and when various subsidiaries were reorganized.

The report of the trustee in National, filed October 15, 1943, follows the same pattern as his report in Federal and requests approval of all his acts from December, 1940 to August 13, 1943. Included in this account is also a summary of the status of the underlying companies of National as of November 30, 1940; of cash receipts and disbursements for the period of the account from January 1, 1935 to August 13, 1943, and from December 1, 1940 to August 13, 1943, together with other matters.

The objectors to the trustee's accounts claim: discrepancies exist in such accounts; there is a failure to show the correct sums of earned and accrued interest on holdings of certain subsidiaries and absence of explanations relative thereto; loans of trust funds were made and not properly accounted for; items in the summary of operating expenses are not properly explained; pro-

fits realized in trading with Jacob Kulp and Myrtle Johnson in bonds of subsidiary companies are not stated; a variance exists between the accounts and the detail schedules supplementing such accounts; the trustee failed to explain his actions in the Quincy Station Office Building Corporation, and his omission to prosecute certain causes of action; the accounts lack detailed information respecting trustee Darrow's purchases and sales of bonds; the trustee's requested compensation should not be allowed; the trustee has failed to state his profits in connection with the Louis Goldman purchase of certain securities; there is a variance between the trustee's reports and the Frederick B. Andrews report; there is failure to accurately and correctly state the condition of the Paul E. Darrow chairman account, and to properly account for series "A" 6½% bonds made by Kulp & Company; there is a failure of the trustee to account for distribution of claims in the Seligman v. Kulp case and to comply with the order of court respecting when and how reports were to be made; there is a failure to show commissions or discounts paid to the trustee on account of certain insurance purchased, and to report concerning fees and compensation paid him as a director or officer of certain subsidiaries of the debtor; there is a failure to fully disclose business transactions and profits made with Colonial Securities Company, and to keep books accurately reflecting profits made or expenses incurred in his many transactions.

The hearings commenced before the Master on October 25, 1944 and concluded on May 28, 1947. Over 2,500 pages of testimony were taken and the respective counsel appearing at such hearings, representing the different parties in interest, conducted extended examinations touching upon the matters contained in the reports and accounts. The Master filed his report April 29, 1948.

The Master's findings of fact cover the trustee's employees' general dealings in the securities of the trusts and their subsidiaries; the purchase of securities in the Seligman v. Kulp case; the placing of insurance by Jacob Kulp; the Quincy Station Post Office Building Corporation dividend transaction; the accounts receivable sold by Maurice Klein as trustee in bankruptcy in the liquidation of Jacob Kulp & Company; the physical setup of the offices, telephone and sharing of help relating to Colonial Securities Co.; the history and transactions of a certain account disbursed as the chairman account; the records, reports and accounts of the trustee, including current records, final reports and accounts, and report to the court; certain discussions had between Darrow and the Securities & Exchange Commission; certain explanations and contentions of the respondent including personal loans, Miss Johnson's services and income tax reduction.

The Master's report, consisting of 83 pages, sets forth in great detail as his findings certain parts of the pertinent testimony offered by the respective witnesses. The Securities & Exchange Commission filed with the Special Master, after the proofs were closed, an abstract of the testimony. It is evident this abstract was painstakingly and carefully prepared by its author, and, undoubtedly, was of material assistance to the Special Master in the preparation of his report. The Master's conclusions of law, summary in form, relate (1) to the trading in underlying securities by employees of the trustee; (2) his purchase of certain securities involved in the Seligman-Kulp case; (3) the insurance commissions received by Mr. Kulp; (4) the Quincy dividend suits and (5) certain accounts receivable of Jacob Kulp & Company.

The Securities & Exchange Commission, Stacy C. Mosser, John W. Guild and Paul E. Darrow filed objections to the Master's Report. These objections, with the exception of the Darrow objections, in substance, state the Master erred in certain of his findings and conclusions regarding the Quincy dividend litigation, the Darrow request for additional compensation, the findings relative to the Kulp insurance commissions, the purchase and ownership of certain securities involved in the Seligman v. Kulp case. Counsel for the former trustee contend error was committed by the Master in making certain find-

ings and because of his failure to make required findings. The Securities & Exchange Commission in objecting to the Special Master's recommendations pertaining to Darrow's fees "that such fees should be presently allowed", urge that the Special Master should have gone further in his report and recommended a disallowance of such fees.

Numerous briefs, both original and reply, were filed by the respective parties in support of their various objections. It is clear from an examination of these briefs and the statements found therein, along with the evidence submitted, the trustee's failure to file reports rendered the determination of his reports and accounts not only extremely difficult but it necessitated conducting a great many hearings extending over a period of several years. The Master's finding concerning the failure of the trustee to file reports of the administration of his trust is confined to the statement: "During the eight and one-third years of Darrow's trusteeship, he filed no reports of his administration of Federal and only one of his administration of National". It further appears little or no explanation was offered the Master for the trustee's woeful neglect of such a fundamental duty.

■ The Master made findings of fact which the Court has carefully considered in connection with the various objections. To discuss in detail these findings and the many objections in the light of the voluminous testimony, and to deal specifically with the various contentions of the objectors, would serve no useful purpose. To set aside all these findings would do violence to the rule that the findings of a Master are not to be disturbed unless it clearly appears such findings are not supported by the evidence. Many hours and days were spent both in taking of the testimony and the introduction of the evidence constituting a part of this report. The Master had full opportunity to see and hear the witnesses and decide the weight and value of their testimony.

The Court believes it unnecessary to summarize the Master's conclusions of law. Briefly stated, these conclusions deal with the trustee's duties, his dereliction of such duties and the legal consequences of such dereliction. Part of the Master's conclusions exonerate the trustee from wrongdoing, other parts do not. The amount the Master concludes the former trustee should be surcharged is fixed at the time of $43,-447.46.

■ The Court, from an examination of the Master's report, the documentary evidence submitted, the objections filed to the Master's report and the briefs in support of such objections, finds that the objections to the findings of fact and conclusions of law of the Special Master that Paul E. Darrow, as trustee, should be surcharged for profits made by Colonial Securities Company, Myrtle Johnson and Jacob Kulp, in the sale of certain securities in the sum of $32,745.96; that Paul E. Darrow should be surcharged for profits made by his employees, Myrtle Johnson and Jacob Kulp in dealing in the securities involved in the Seligman v. Kulp transaction in the sum of $10,701.50; that Paul E. Darrow should not be surcharged for insurance commissions earned by Jacob Kulp on insurance written on the trusts' property; that Paul E. Darrow should not be surcharged in connection with certain suits to recover a certain dividend declared by the directors of the Quincy Station Post Office Building Corporation; and that no surcharge be presently made to Paul E. Darrow's conduct in connection with the purchase of assets of Jacob Kulp & Company by his employee, Myrtle Johnson, should be and the same are hereby overruled.

The Court finds that the objections to the findings of fact and conclusions of law respecting the Paul E. Darrow request for additional compensation in Federal and National should be and the same are hereby sustained.

In view of the fact the plan of reorganization for National contemplates the cancellation of the securities in Lot 2, and the elimination of certain receivables against National and its subsidiaries, the determination of: the ownership of certain securities described in the conclusions of law as "securities in Lot 2"; whether or not Paul E. Darrow should be further surcharged for profits made in dealing in the securi-

ties involved in Seligman v. Kulp; whether or not Paul E. Darrow should be surcharged for his conduct in connection with the purchase of certain assets of Jacob Kulp & Company by his employee, Myrtle Johnson; and whether or not Paul E. Darrow should be paid the additional compensation requested in his final reports and accounts, will, undoubtedly, throw further light on the question whether Paul E. Darrow should be allowed the requested compensation and, therefore, the foregoing matters are hereby referred to Special Master Martin Ward in accordance with the general order of reference entered herein June 10, 1948.

The Court reserves the right to make such further orders respecting the approval or rejection of former trustee Darrow's final reports and accounts, and the allowance or disallowance of compensation as requested by former trustee Darrow, as equity may require.